A 5014-5115 Mary Woolbright v. Cookie Crews. Remember C-15, that's for die. This is for foul. Can you tell me? Good morning, may it please the Court. Edmund Sauer on behalf of Petitioner Gary Woolbright with me. At Council Table is Jessica Jernigan Johnson. This habeas case presents a very narrow question, Your Honors, whether under the Supreme Court's recent decision in Trevino v. Thaler, Kentucky defendants have a meaningful opportunity to raise ineffective assistance claims on direct appeal. Existing precedent of this Court answers that question. Kentucky's framework gives defendants less of an opportunity to raise ineffective assistance claims on direct appeal than the Tennessee framework that this Court held inadequate in Sutton. Consequently, this panel should apply Sutton and hold that Kentucky defendants, like Tennessee defendants, do not have a meaningful opportunity to raise ineffective assistance claims on direct appeal. Two features of Kentucky's framework establish that it falls well within the rule and reasoning both of Trevino and this Court's decision in Sutton. First, Kentucky imposes extraordinarily strict deadlines on post-trial motions that, in theory, could be used to raise ineffective assistance claims on direct appeal. There are only two vehicles that the Commonwealth suggests that are possible of raising these types of claims on direct appeal, a motion for a new trial and a motion to alter and amend under 5905. The rules in Kentucky, without a doubt, impose much stricter deadlines on both of those motions than this Court found inadequate in Sutton. In Sutton, the deadline was 30 days from sentencing. In Kentucky, it's five days from verdict. If 30 days from sentencing isn't enough time to raise an ineffective assistance claim, five days from verdict necessarily isn't adequate. If we agree with you, what is the result? Does it go back to the District Court? Does it go back to the State Court? Or what? Something else, maybe. Your Honor, I would suggest that the panel do exactly what this Court did in Sutton, which is to remand to the Federal District Court to give the Petitioner an opportunity to develop his claims. The record is, at this stage and certainly not in the State, to enable this Court to do a review of the merits at this time. So we would ask the Court to follow Sutton. The State Court, in this case, did have some sort of a… Well, it didn't have a hearing, did it? No, sir. It allowed the defendant to put in something, but his lawyer just said, let him do it or something of that nature, right? Correct. Your Honor, Mr. Woolbright was not provided with counsel when he filed his Rule 1142 motion. But he got one later that didn't do much. Yes, sir. That's exactly the point, Your Honor. And so he requested a hearing in State Court to raise his claims. He was denied a hearing. He was diligent in Federal Court. He filed his Pro Se 1142 motion, requested a hearing, and the Magistrate Judge denied him a hearing operating under the misimpression that the Coleman Rule applies here. And since Coleman, Trevino, and Martinez have created this narrow exception that this Court recognized in Sutton. You're basically and only asking us to say Trevino applies to Kentucky, basically. Yes, sir. That's all we're asking. And that wouldn't extend to the two, like there's seven claims, but you're only dealing with the five claims. Your Honor… You're not asking for reversal with respect to the two claims that were raised. Is it two or three now? Well, there are three. Two, technically, a part of a third. Martinez, in all candor to the Court, Martinez has language in it that says ineffective assistance of appellate counsel on collateral review isn't enough to fall within this exception. We hope the Supreme Court will reconsider that, blah, blah, blah. But we acknowledge that. So those two claims are gone. We feel like… Now you filed something more recently which says what, part of a third? Yeah, part of the third, the constructive amendment of the indictment. This Court's order appointing us said that five claims, and upon review, we looked at it, we thought there were five claims. The commonwealth thought there were five claims. And in looking at it again and preparing for argument, we noticed that part of that constructive amendment argument was, in fact, presented. So we acknowledge that that argument was not presented. Well, we agree with you. We could just clear that up in the opinion. Yes, sir. We would ask you to do that. So not only is the restriction… Tyler has a question. Excuse me. If it goes back, and I'm trying to be practical about it, if it goes back to the district court, the district court's job is to find if there was ineffective assistance at the post-trial proceeding. Yes. And whether, in fact, that was cause of prejudice for allowing them to consider further evidence. Well, you certainly could ask the district court to do that. We don't think it's necessary here because the commonwealth doesn't dispute that for purposes of Trevino, Mr. Woolbright was effectively not provided the assistance of counsel. Doesn't look like it. Exactly, Your Honor. But we feel very confident that Mr. Woolbright can make that showing based on our review of the record and then notice that his attorney filed with the court not saying that she had investigated anything but just saying that she wasn't going to file anything else. But you might have to still find there was a cause of prejudice. Yes, sir. Go behind it and look and see if he had a valid reason for doing something. Your Honor, we think under Trevino and Martinez, the absence of counsel is necessarily prejudicial. So we think we can make that showing pretty easily. And if you'd like to remand to the district court for that showing, we would appreciate that. But we would definitely. I take the question to be that that would be inherent in our agreeing with your position on Trevino. We'd have to send it back if we agree with you, right? Oh, yes, Your Honor. Yes, Your Honor. If we want to, I mean, what else would we be doing? Well, if the court would like, the court could say, well, Mr. Woolbright was denied the assistance of counsel in his 1142 proceeding. And I think that is pretty clear on the record. Neither of you is asking for that. I'm sorry? Neither of you is asking for that. No, sir. In addition to the restrictive deadlines, the Kentucky Supreme Court has repeatedly directed its bar and criminal defendants to raise these kinds of claims on collateral review. As the Supreme Court and this Court pointed out in Sutton, it would be unfair for the court to hold that criminal defendants, because they have this theoretical possibility, aren't entitled to Martinez when the Kentucky Supreme Court has repeatedly told them not to take advantage of this opportunity. So we'd ask the court apply Sutton, reverse and remand, for consideration of the substantiality of Mr. Woolbright's claims. Thank you. Thank you, Mr. Sutton. Mr. Shatford. May it please the court, counsel. First of all, I think we skipped over an important part, and that's why I filed a motion to dismiss because of an improvidently granted COA, and then I raised it again in my brief, is the fact that the district court has already made an alternate ruling on the merits that these claims had no merit. That was an alternate to its procedural default rulings. And I pointed that out in my brief. It's at page 907 in the district court record. So there's really nothing to remand for. So that's the first point I want to get across. That's if we agree with that analysis, right? If we agree with the alternate holding that you're suggesting. Yes. We're not going to buy that, are we? That could be reviewed as well, right? Well, the certificate of appealability did not address that at all. In fact, in... I don't understand why. I mean, it's a throwaway sentence at the end of a longer analysis. I mean, maybe they should have, but... Okay. Well, and on that, I just want to point out, though, that the certificate of appealability, I mean, did not, in fact, in it, it referred to the SLAC case and the standard of granting a COA when there has been no merits determination. It then said it discussed the cause leg but did not discuss the prejudice leg. On other claims that are not before this court under the COA, it did briefly discuss the merits of those. So, and also, and I don't want to belabor this too much, but some of the claims are just purely conclusory. Some of the claims, we really didn't know what they were until the reply brief. And the problem with that is, of course, habeas rules require very specific findings, very specific pleadings. This is not... I don't see what's improper, though, if the district court just threw it out wholesale without even getting into whether they had much substance to them. Just at the inset, and in addition, they don't look like valid claims anyway. Why is it... So there's two reasons. One of them, if it's wrong, there's no reason for us not to reverse it and send it back and have the court look at the other reasons. There's nothing structurally wrong with doing that. Well, no, I don't think there's anything structurally wrong with it. Then let's look at the issue. Okay, and one point, and I'll move on to that. And if the court does that, though, I do want to emphasize that I don't think that means an evidentiary hearing because I think there's some development, and I don't want to get into a video record. If we agree with them, which I'm not saying we do, I want to hear your argument, but I don't see why we would have to do anything but send it back and say decide, but recognize that Trevino applies in Kentucky. What more would we have to say? That's all they want right now. Yes. Okay. First of all, the Kentucky Supreme Court has never, ever refused to hear a claim of ineffective assistance of counsel that had been raised at the trial court. You know, it doesn't say that you have to have that, though, right? No. The point is, though, that... And they say the courts of Kentucky have repeatedly said these things should be brought on collateral appeal. But that has to be taken in context with the case. There's a lot of them, though. It's not just one case that you can contextualize. I mean, there's case after case that said that, right? Well, referring to their reply brief where they cite several cases, not a single one of those cases was that claim made to the trial court before coming up on direct appeal. Now, what Kentucky does not do, it does not allow on direct appeal an appointment of a commissioner to take evidence and report to the Court of Appeals or the Supreme Court. They don't do that. They say, look, you have an opportunity to raise this at the trial court level. It can be a motion for a new trial under the criminal rules, which is five days. It can be if there's a guilty plea involved. I cited several cases where they made motions to withdraw the guilty plea. It can also be via a civil rule 59 motion, which is ten days after sentencing. The problem with all that, of course, is it's very difficult for a lawyer to say, well, I was ineffective at counsel, and therefore we raise this at the trial level, right? And even the courts have said that that's not proper to do. That is an issue in some cases, yes. Now, of course, Kentucky is different than Tennessee, the Sutton case, because Kentucky does have different branches dealing with public defenders where there's a trial level, there's an appellate level, and then there's usually a post-conviction level so that they're usually not the same counsel on appeal as at the trial, which is part of what Sutton was bothered by. They say that if you're looking at practicalities, which your argument does, that you have to look at when the person on the appellate staff actually gets involved. Well, that's part of the story. That's what they argue, right? I'm sorry? That's what they argue, right? Yes. What's wrong with that argument? Well, one of the things that's wrong with it is because, in reality, every office of the Department of Public Advocacy has within it the idea that there may be conflicts. I mean, they routinely hire conflict counsel so that if a litigant, a defendant, wants to raise a claim, they can do so at the trial court level, and the trial court can appoint conflict counsel at that point in time. They do that quite often. I mean, they do it when there are multiple defendants. You cited a bunch of cases where the Court of Appeals on direct appeal decides ineffective assistance of trial counsel claims on direct appeal. Are there one or two that you found 10 years ago, or they happen 50 times a year, or what? They're not 50 times a year. Five times in history, or what's the scope of how often this happens? Well, I think I've probably cited 8 or 10, 12 cases that were published. Ever? Well, that were published, I think they were all published between the Court of Appeals and the Supreme Court. And I know in Sutton… How were those raised generally? Some of them were motions to withdraw guilty pleas and motions for a new trial, both instances. And the Sutton opinion discussed this same thing when the state of Tennessee cited, I think, 14 cases where that had been done. It recognized, oh, well, this is a little bit different than Trevino. It's quantitatively and qualitatively different. However, because of the conflict of counsel issue, we don't think that carries the day. So I think that the fact that we've cited a number of cases, maybe not hundreds of cases, but a number of cases, I think kind of falls in line with what Sutton said about that. I also want to address the citation of additional authority by way of letter in both of those cases, Knight and Miller. Both of those were unpublished Court of Appeals opinions. Both of those refer to the general rule in dicta. In one case, the appeal was untimely. In the other case, there was no final and appealable order, which 5905, you have to have a final and appealable order before you can file a 5905 motion under state law. And the one case cited no authority. The Miller case cited two cases, separate cases, Gross v. Commonwealth, really which had nothing to do with this. So what I'm trying to say is those cases cited in that letter are really not authoritative. They don't reflect the state of the law in Kentucky. And so I think the Court can disregard those. Well, from a practical matter, it's just like this Court. We discourage any such issues brought up on direct appeal because you can't make a record. It's got a lot of evidence maybe that hoards the record, as they say in Ohio. And so you have to have a hearing, and the trial courts generally don't have those kind of hearings, do they? Well, certainly they do sometimes. Well, it's very rare, though. It depends on if they're brought up. If they file the motion in time, they can certainly have an evidentiary hearing, whether it's under the criminal rule, whether it's under a motion to withdraw the guilty plea. I mean, the one case I'm very familiar with, just because I was counsel in it, was the Pridham case. One of the defendants, Cox, had filed a motion, and it was several months before he had his hearing, and it was actually two years before he was actually sentenced. And the point being that once you file the motion, there is no time limit on when to set an evidentiary hearing and when to decide that evidentiary hearing and render a decision. But the motion has to be filed in a real short time, right? It's within, yes, five days under the criminal rules of the verdict, ten days following sentencing under Rule 59, and then if you do, as in this case, withdrawal of a guilty plea, it has to be before sentencing. But the other aspect is that Kentucky has a video system, which is different than any of the other reporting systems of Sutton or Trevino. You can literally walk into the clerk's office, and within maybe that day or the next day, you get a copy of the video, plug it in, and go over it. And I think it's the combination. You say go over it like that's easy to sort of thumb through it. Those things take forever to review, don't they? Yes and no. Depending on how long the trial was. A two-day trial might take two days, right? Without doing anything else?  Or do you get a transcript of them? Well, I do this almost on a daily basis. I understand. And what I do is I pop them in and I speed through them. You speed through them, like they talk real fast, like Mickey Mouse? They talk real fast, and then you slow it down when they get to something that's important. You can go through them much quicker than the trial is, and then certainly if you're reviewing it for errors, you can go through it even faster. Because when I'm writing, again, because we essentially operate as quasi-court reporters for our state courts of appeals, I have to take a lot more, I try to take a lot more detail and put it into my facts, because that's the only record the court has, except for one justice or one judge may look at the video. So to answer the question, though, I think it can be done much more quickly than what's happening in either Tennessee or in the Trevino case, because there are... Are the courts talking about moving away from video to transcripts? No, they're not, because not that I'm aware of. If it is, it's new, because they've just now, within the last year or so, kind of switched over entirely, as my understanding, from tapes to DVDs. Oh, I see. And so I think, and I can't imagine the state has the budget to do that either. So with that, I'll just simply ask the court to take into consideration the fact that there are differences. We do have the video system, which is still quicker than the transcripts, which were not even available until after the motions were due in Trevino and Sutton. And then we have the procedural mechanisms, which are open. Thank you, Counselor. Thank you. Just a couple of points, Your Honor. What matters under Trevino is the general rule, and the Commonwealth hasn't disputed. In fact, I think he conceded that the general rule in Kentucky, straight from the Kentucky Supreme Court, is you have to bring ineffective assistance claims on collateral review. He hasn't cited a single case in Kentucky where an ineffective assistance claim has been brought via 5905. And I think he overstates his case in terms of how many have been able to be brought under motion for new trial. We counted five or six. But even if there were 15, far more were presented to the Supreme Court in Trevino, and the Supreme Court said that doesn't matter. What matters is the general rule. And as a general rule, you can't present these claims. Judge Shiler, you are correct that in Kentucky, new counsel has to be appointed under an ethics opinion to raise any ineffective assistance claim on direct review. So under the Commonwealth's argument, within five days of the verdict, a defendant has to hire a new lawyer. That new lawyer has to look at the videotapes of the trial, figure out what kind of ineffective assistance claims he or she might have, go investigate those claims, and file that motion, again, all within five days of sentencing. Assuming he has the money. Assuming he has the money and the technological ability to review the DVD. So, Your Honor, we think this falls well within the rules set forth in set, and we ask that you reverse. What about the issue raised by the state here that the court had an alternative ruling here which suggested we shouldn't even have a COA here? Your Honor, that... Did that take care of the issue? No, Your Honor, not at all. Because as I pointed out before, there's been no development of these claims at all. So I don't see how Mr. Woolbright could have developed and presented a record for this court to consider those claims. We've laid out in a brief the best job that we can to explain why he should be given the opportunity to develop those claims. But the same was true in Trevino itself. The district court said, well, on this record, we don't think he would have any merit. And the Fifth Circuit said, well, we still need to remand. And that's the approach that this court took in Sutton. So that boilerplate language, respectfully to the district court, that language did not engage in any analysis of the claims. The court was under the misimpression that these claims were all procedurally defaulted, and that was wrong, and we ask that the court reverse. What's the status of comparable litigation in Michigan and Ohio? We haven't... Tennessee and Kentucky, yeah, Michigan and Ohio. Michigan, I haven't seen a decision from this court addressing it. Ohio, this court addressed it in the context of a 60-D, which is, of course, very different than what we have here, but no authoritative guidance from the other states, only Tennessee. Thank you. I was just curious. Thank you. Thank you, counsel. Thank you. Mr. Sauer, I see you were appointed under the Criminal Justice Act, and we appreciate your advocacy. It's helpful to the system. Thank you. Thank you.